## Newton v. Citizens' Bank of Shelbyville et al.

(Decided Nov. 20, 1934.)

WILLIAM ALPHA HUBBARD, L. G. BRADBURY and J. S. LUSCHER for appellant.

JOHN K. TODD and H. B. KINSOLVING, Jr., for appellees.

OPINION OF THE COURT BY JUDGE CLAY—Affirming.

Bailey W. Newton brought this action against the Citizens' Bank of Shelbyville, P. R. Beard, and Charles Randolph to cancel an alleged power of attorney on the ground of forgery. The chancellor held that Newton had failed to maintain the burden of proof, and dismissed his petition. He appeals.

P. R. Beard was cashier, Charles Randolph, assistant cashier, and G. T. Perkins, bookkeeper, of the Citizens' Bank of Shelbyville. The instrument sought to be canceled is a power of attorney from Newton to P. R. Beard, appointing the latter his attorney in fact to indorse and sell 306 shares Standard Oil of Kentucky, 90 shares Standard Oil of Indiana, 80 shares Standard Oil of New Jersey, 25 shares Standard Oil of California, 30 shares Skelly Oil Company, and 45 shares Kentucky Central Life & Accident Insurance Company. The instrument is dated February 9, 1931, purports to have been signed by Newton in the presence of Charles Randolph and G. T. Perkins, and to have been acknowledged by him before Charles Randolph, a notary public.

There is not much dispute as to the relations and transactions between Newton and the bank. For some time Newton had been borrowing money from the bank to buy stocks, and pledging the stocks as collateral for the loan. On February 3, 1931, he executed a note to the bank for $10,500, which was the consolidation of two other notes that had become due. On the note was the following:

"I hereby pledge first as security therefor, and second as security for any other debt I may owe now, or may hereafter owe said bank all of the stock held by them, and agree that the Citizens Bank may sell said collateral for cash at my expense, without notice to the undersigned, for the purpose of paying this note or any other obligation of the undersigned. Sureties and endorsers waive notice, protest and extensions of time of payment."

The $10,500 note was afterward paid off, and a new note for $9,500 was executed on February 1, 1932. All the stocks pledged were then in possession of the bank, and were listed on the back of the new note, which gave the bank the same authority to sell. It is admitted that all the stock certificates were signed in blank with lead pencil, except the 45 shares of Kentucky Central Life & Accident Insurance Company. When the stocks pledged began to go down, Newton was notified the bank wanted additional security. He then put up the Standard Oil of Kentucky stock belonging to his wife. Afterward more collateral was demanded, but Newton was unable to furnish it. Thereupon P. R. Beard, the cashier, sold through J. J. B. Hilliard & Son, of Louis-

ville, all the stocks except the 45 shares of Kentucky Central Life & Accident Insurance Company, and so notified Newton. According to Beard, Newton said, "Well to sell that also, that they could not transfer any of them." Then the insurance stock was also sold. On going to Louisville, Mr. Beard was informed by a member of the brokerage firm that the certificates which were signed in lead pencil would have to be signed in ink. Mr. Beard did not have the power of attorney with him, and was informed that it would not be necessary, as the signatures could be traced in ink, which was the custom, and was all right. The signatures on the certificates were then traced, and the stock transferred. The proceeds of the sale were credited on the note, leaving but a small balance due. If the bank had waited longer, the stock sold would have brought less.

Coming to the question of forgery, and omitting that portion of the evidence to which exceptions were properly sustained, we find the following situation: Newton says that he did not sign the power of attorney, but was in Cincinnati on February 9, 1931. Two handwriting experts, one of whom changed his opinion on further investigation, compared the signature on the power of attorney with certain admitted signatures of Newton, and gave it as their opinion that the signature in question was not in his handwriting. On the other hand, P. R. Beard, the cashier, Charles Randolph, the assistant cashier, who took Newton's acknowledgment, and G. T. Perkins, bookkeeper of the bank, all swear that they were present and saw Newton sign the power of attorney. In addition to this, two experts gave it as their opinion that the signature on the power of attorney was in the handwriting of Newton. Eliminating the opinions of the experts as being equiponderant, we have on the one hand the unsupported evidence of Newton that he did not sign the power of attorney and on the other the evidence of three witnesses that he did sign the power of attorney. Another circumstance not to be overlooked is the fact that the note itself authorized the bank to sell the collateral, and it is by no means probable that three reputable bank officials would enter into a conspiracy to commit an unnecessary forgery. In addition to this, we have carefully compared the disputed signature with certain admitted signatures of Newton, and are convinced that the disputed signature is in his handwriting.

In view of these circumstances, it is not perceived how the chancellor could have reached any other conclusion.

Judgment affirmed.